



FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

MAR 2 3 2007

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

ORIGINAL

GLENN VICARY, derivatively on behalf
of Nominal Defendant Home Depot, Inc.

                Plaintiff,

-v-

KENNETH G. LANGONE, ROBERT L.
NARDELLI, CAROL B. TOME, LABAN
P. JACKSON, JR., DENNIS M.
DONOVAN, FRANK L. FERNANDEZ,
THOMAS V. TAYLOR, JOHN L.
CLENDENIN, CLAUDIO X.
GONZALEZ, BONNIE G. HILL,
GREGORY D. BRENNEMAN,
MILLEDGE A. HART, III, ANGELO R.
MOZILO, THOMAS J. RIDGE,
LAWRENCE R. JOHNSTON, and
BERRY R. COX,

                Defendants,

and

HOME DEPOT, INC.

                Nominal Defendant.

CIVIL ACTION NO:

# 1: 07 · CV - 0693

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT

-RLV

JURY TRIAL DEMANDED

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff, by his attorneys, brings this action derivatively on behalf of nominal defendant Home Depot, Inc. ("Home Depot" or the "Company") and alleges upon personal knowledge as to his own acts, and as to all other matters upon information and belief based upon, inter alia, the investigation conducted by counsel, as follows:

## NATURE OF THE ACTION

1.     Home Depot is world's largest home improvement retailer and the second largest retailer in the United States, based on Net Sales for the fiscal year 2005.   Home Depot sells a variety of building materials, home improvement and lawn and garden products.

2.     Between 1996 and 2000, defendants caused Home Depot to grant tens of thousands of under-priced stock options to its officers, directors and employees, which resulted in over-compensation for these employees, understatement of the Company's compensation expenses and artificial inflation of Home Depot's publicly reported financial results.

3.     At the same time that the price of Home Depot stock was artificially inflated due to this stock-option scheme, certain of the defendants, engaged in insider trading, resulting in proceeds of approximately $272 million.

4.     Additionally, Home Depot's board of directors have repeatedly approved exorbitant and unreasonable compensation to Home Depot's top executive officer, Robert L. Nardelli, amounting to $245 million during the five years that Nardelli worked at Home Depot, designed to serve the directors' own selfish interests without regard to detriment of the Company. Each of Home Depot's directors is handpicked by Lead Director and Nominating and Corporate Governance Committee (the "Nominating Committee") Chairman Kenneth G. Langone, and share close personal and professional interrelationships and suffer from irreconcilable conflicts that prevent them from acting independently from Langone or each other.

2

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted in this complaint because Home Depot conducts business in Georgia and has its principal place of business in Atlanta, Georgia. The amount in controversy, exclusive of interest and cost, exceeds the jurisdictional minimum of this Court.

6. Venue is proper in this Court because Home Depot has a substantial presence in Georgia and is headquartered in Atlanta, Georgia. Moreover, each defendant has had extensive contacts with Georgia as a director and/or officer of Home Depot or otherwise, which makes the exercise of personal jurisdiction over them proper.

## PARTIES

7. Plaintiff Glenn Vicary resides at 199 Whippoorwill Drive in Oak Ridge, Tennessee, 37830. Plaintiff purchased and owned shares of Home Depot during the relevant time period.

8. Nominal defendant Home Depot is a Delaware corporation with its principal place of business located at 2455 Paces Ferry Road, NW, Atlanta, Georgia 30339. Home Depot is the world's largest home improvement retailer and the second largest retailer in the U.S. after Wal-Mart based on Net Sales. As of the end of the fiscal year ended January 29, 2006, Home Depot operated 2,042 stores.

9. Defendant Kenneth G. Langone ("Langone") has been a director of Home Depot since 1978 and was named Lead Director in 1998. Langone has also been Chairman, Chief Executive Officer and President of Intemed Associates, Inc., an investment banking and brokerage firm, since 1974, and was a director of General Electric Company ("General Electric")

3

from 1999 to 2005. Langone is also a director of ChoicePoint Inc. ("ChoicePoint"), YUM! Brands, Inc. ("Yum") and Unifi, Inc. At all relevant times hereto, Langone has served on the Executive, Audit, and Nominating & Corporate Governance Committees of the Home Depot Board. The Audit Committee approved Home Depot's false financial statements and financial results between 1996-2005. Langone also actively participated in the preparation, review and approval of Home Depot's publicly reported financial results and financial statements for FY 1996-2005, as well as the corresponding reports on SEC Form 10-K and press releases. Based on his knowledge of material non-public information regarding the Company, defendant Langone violated his fiduciary duty by selling 2.0 million Home Depot shares for insider trading proceeds of more than $70.3 million. Langone is a citizen of New York.

10.     Defendant Robert L. Nardelli ("Nardelli") joined the Company as President and Chief Executive Officer in December 2000, and became Chairman of the Board in 2002. Nardelli is also Chair of the Executive Committee of the Board of Home Depot. At all relevant times, Nardelli actively participated in the management of Home Depot's daily business affairs and finances. Nardelli also actively participated in the preparation, review and approval of Home Depot's publicly reported financial results and financial statements for 1996-2005, as well as the corresponding reports on SEC Form 10-K and press releases. Nardelli is a citizen of Georgia.

11.     Based on his knowledge of material non-public information regarding the Company, defendant Nardelli violated his fiduciary duty by selling 271,581 Home Depot shares for insider trading proceeds of more than $11.3 million.

4

12.     Defendant Carol B. Tome ("Tome") joined the Company in 1995 as Vice President and Treasurer. Since May 2001, Tome has been Chief Financial Officer ("CFO") and Executive Vice President of Home Depot. Tome actively participated in the preparation, review and approval of Home Depot's publicly reported financial results and financial statements for 1996-2005, as well as the corresponding reports on SEC Form 10-K and press releases. Tome caused these documents to be disseminated by Home Depot in Georgia to Home Depot shareholders located in Georgia (and elsewhere) and to the SEC. Based on her knowledge of material non-public information regarding the Company, defendant Tome violated her fiduciary duty by selling 85,500 Home Depot shares for insider trading proceeds of more than $3.3 million. Tome is a citizen of Georgia.

13.     Defendant Laban P. Jackson, Jr. ("Jackson") has been a director of Home Depot since July 2004. Jackson serves on the Audit Committee of the Home Depot Board. The Audit Committee approved Home Depot's false financial statements and financial results between FY 2004-2005. Jackson also actively participated in the preparation, review and approval of Home Depot's publicly reported financial results and financial statements for 2004-2005, as well as the corresponding reports on SEC Form 10-K and press releases. Jackson is a citizen of Kentucky.

14.     Defendant Dennis M. Donovan ("Donovan") has been Senior Vice President since he joined Home Depot in April 2001. Donovan actively participated in the preparation, review and approval of Home Depot's compensation practices, as well as the corresponding proxies. Based on his knowledge of material non-public information regarding the Company, defendant Donovan violated his fiduciary duty by selling 275,958 Home Depot shares for insider trading proceeds of more than $10.2 million. Donovan is a citizen of Georgia.

5

15.     Defendant Frank L. Fernandez ("Fernandez") has been Executive Vice President, General Counsel and Secretary since he joined Home Depot in April 2001. Fernandez actively participated in the preparation, review and approval of Home Depot's publicly reported financial results and financial statements for 2001-2005, as well as the corresponding reports on SEC Form 10-K and press releases. Based on his knowledge of material non-public information regarding the Company, defendant Fernandez violated his fiduciary duty by selling 72,667 Home Depot shares for insider trading proceeds of more than \$3.0 million. Fernandez is a citizen of Georgia.

16.     Defendant Thomas V. Taylor ("Taylor") joined Home Depot in 1996 and has been Executive Vice President, Merchandising and Marketing of Home Depot since 2005. Taylor actively participated in the preparation, review and approval of Home Depot's publicly reported financial results and financial statements for 1996-2005, as well as the corresponding reports on SEC Form 10-K and press releases. Based on his knowledge of material non-public information regarding the Company, defendant Taylor violated his fiduciary duty by selling 55,500 Home Depot shares for insider trading proceeds of more than \$2.3 million. Taylor is a citizen of Georgia.

17.     Defendant John L. Clendenin ("Clendenin") has been a director of Home Depot since 1996. At all relevant times, Clendenin has served on the Audit, Leadership Development and Compensation Committees of the Home Depot Board Clendenin serves as Chairman of the Audit Committee. The Audit Committee approved Home Depot's false financial statements and financial results between 1996-2005. Clendenin actively participated in the preparation, review and approval of Home Depot's publicly reported financial results and financial statements for

6

1996-2005, as well as the corresponding reports on SEC Form 10-K and press releases. Based on his knowledge of material non-public information regarding the Company, defendant Clendenin violated his fiduciary duty by selling 6,170 Home Depot shares for insider trading proceeds of more than $259,271. Clendenin is a citizen of Georgia.

18.     Defendant Claudio X. Gonzalez ("Gonzalez") is a director of the Company and has been since 2001. Gonzalez serves on the Audit and Leadership Development and Compensation Committees of the Home Depot Board. The Audit Committee approved Home Depot's false financial statements and financial results between 2001-2005. Gonzalez actively participated in the preparation, review and approval of Home Depot's publicly reported financial results and financial statements for 2001-20052, as well as the corresponding reports on SEC Form 10-K and press releases. González is a citizen of Mexico.

19.     Defendant Bonnie G. Hill ("Hill") has been a director of the Company since 1999. Hill serves on the Leadership Development and Compensation Committee of the Home Depot Board. Hill has also been President of B. Hill Enterprises, LLC, a consulting firm, since 2001, a co-founder of Icon Blue, Inc., a marketing company, and Chief Operating Officer since 1998, and was President and Chief Executive Officer of The Times Mirror Foundation from 1997 to 2001, Senior Vice President, Communications and Public Affairs, of the Los Angeles Times, from 1998 to 2001, and Vice President of the Times Mirror Company from 1997 to 2000. Hill is also a director of AK Steel Holding Corporation, Albertson's Inc. ("Albertson's"), California Water Service Group, Hershey Foods Corporation and YUM. Hill was also a director of ChoicePoint between 2001 and 2004. Hill actively participated in the preparation, review and approval of Home Depot's publicly reported financial results and financial statements for 1999-

2005, as well as the corresponding reports on SEC Form 10-K and press releases. Hill is a citizen of California.

20.     Defendant Gregory D. Brenneman ("Brenneman") has been a director of Home Depot since 2000. Brenneman serves on the Audit Committee of the Home Depot Board. The Audit Committee approved Home Depot's false financial statements and financial results between 2000 and 2005. Brenneman actively participated in the preparation, review and approval of Home Depot's publicly reported financial results and financial statements for 2000-2005, as well as the corresponding reports on SEC Form 10-K and press releases. Brenneman is a citizen of Texas.

21.     Defendant Milledge A. Hart, III ("Hare) has been a director of Home Depot since 1978. Hart is a member of the Executive Committee of Home Depot's Board. Hart actively participated in the preparation, review and approval of Home Depot's publicly reported financial results and financial statements for 1996-2005, as well as the corresponding reports on SEC Form 10-K and press releases. Based on his knowledge of material non-public information regarding the Company, defendant Hart violated his fiduciary duty by selling 1.98 million Home Depot shares for insider trading proceeds of more than $49.6 million. Hart is a citizen of Texas.

22.     Defendant Angelo R. Mozilo ("Mozilo") has been a director of Home Depot since 2006. Mozilo has been Chief Executive Officer of Countrywide Financial Corporation since 1998 and Chairman since 1999. Mozilo is a citizen of California.

23.     Defendant Thomas J. Ridge ("Ridge") has been a director of Home Depot since 2005. Ridge is a citizen of Pennsylvania.

24.     Defendant Lawrence R. Johnston ("Johnston") has been a director of Home Depot since 2004.  Johnston has also been Chairman, Chief Executive Officer and President of Albertson's since April 2001, and was President and Chief Executive Officer of GE Appliances from 1999 to 2001.  Johnston is a citizen of Idaho.

25.     Defendant Berry R. Cox ("Cox") was a director of Home Depot from 1978 until his sudden retirement in June 2005. Cox actively participated in the preparation, review and approval of Home Depot's publicly reported financial results and financial statements for 1996-2005, as well as the corresponding reports on SEC Form 10-K and press releases.  Cox is a resident of Texas.

26.     Defendants Langone, Nardelli, Tome, Jackson, Jr., Donovan, Fernandez, Taylor, Clendenin, Gonzalez, Hill, Brenneman, Hart, Mozilo, Ridge, Johnston, and Cox are collectively referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

27.     By reason of their positions as officers and/or directors and fiduciaries of Home Depot and because of their ability to control the business and corporate affairs of Home Depot, the Individual Defendants owed Home Depot and its shareholders fiduciary obligations of trust, loyalty, good faith and due care, and were and are required to use their utmost ability to control and manage Home Depot in a fair, just, honest and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Home Depot and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

9

28.     To discharge their duties, defendants were required to exercise reasonable and prudent supervision over the management and financial affairs of Home Depot. By virtue of this obligation, these defendants were required, among other things:

(a)     to, in good faith, manage, conduct, supervise and direct the business and affairs of Home Depot carefully and in good faith in accordance with state and federal laws and regulations and the articles and by-laws of Home Depot;

(b)     to exercise reasonable control and supervision over the officers and employees of Home Depot;

(c)     to exercise reasonable care and good faith in evaluation of the prudence and soundness of policies and practices proposed to be undertaken by Home Depot;

(d)     to ensure that Home Depot did not engage in unsafe, imprudent or unsound practices and that Home Depot complied with all applicable laws and regulations;

(e)     to establish guidelines and policies adequately governing the structure and organization of the Company's operations;

(f)     to establish guidelines and policies adequately governing Home Depot's accounting practices;

(g)     to maintain a proper division of authority and responsibility among the officers and directors of Home Depot so as to prevent the dominance of any officer or director in the conduct of the business and affairs of Home Depot;

(h)     to ensure that Home Depot did not engage in unsafe, imprudent or unsound practices and to become and remain informed as to how Home Depot was, in fact, operating;

(i)     to maintain and implement an adequate and functioning system of internal financial and accounting controls and management information systems, such that Home Depot's assets would be safeguarded, its financial statements and information would be

10

accurately recorded and reported, and corporate managers would be given prompt notice of serious problems or divergences so that risk to the corporation would be minimized; and

(j)      to supervise the preparation and filing of financial results and financial statements required by law from Home Depot, including the Company's Reports on Form 10-K, and to examine and evaluate any reports of examination, audits or other information required by law concerning the financial condition of Home Depot and to make, full and accurate disclosure of all material facts concerning, among other things, each of the subjects and duties set forth above.

29.      At all relevant times, the Individual Defendants occupied positions with Home Depot or were associated with the Company in such a manner as to make them privy to confidential proprietary information concerning Home Depot, its operations, finances, financial condition, products and present and future business prospects. Because of these positions and such access, each of the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to and were being concealed from the public.

## SUBSTANTIVE ALLEGATIONS

### Improper Stock Option Grants

30.      Between 1996 and 2000, the Individual Defendants caused Home Depot to grant tens of thousands of under-priced stock options to its officers, directors and employees.

31.      The *reported* dates Home Depot stock options were granted differed from the dates on which the options were *actually granted*. This practice permitted directors, officers and employees to make more money on their options because it set a lower "strike price" at which the options could be exercised, allowing employees to pocket larger profits.

11

32.     Specifically, Individual Defendants dated all of Home Depot's 1995 option grants
to top officers as of October 26, 2005, at $36.875 per share, the day Home Depot reached its low
of the month. The stock traded between $36.875 and $39.63 per share during October 1995.

33.     Individual Defendants dated all of the Company's top officers 1996 option grants
as of February 27, 1996 at $43.25 per share, the low of the month, when the stock traded as high
as $48.00 per share.

34.     Individual Defendants dated all of the Company's top officers' 1997 grants as of
February 20, 1997 at $34 per share, near the low of the month. Within days the stock closed at
$36.83 per share.

35.     Individual Defendants dated all of Home Depot's 1998 option grants to top
officers on or about February 26, 1998, at $31.9375 per share, the low of the month.

36.     Individual Defendants dated the 2000 option grants to most officers as of
February 24, 2000 at $53.00 per share, the low of the month. The stock closed at $57.50 per
share within a few days of these grants.

37.     On June 16, 2006, Home Depot announced the results of an internal investigation
into options backdating in a press release (the "June 16 Press Release"). The June 16 Press
Release stated in relevant part:

> The Home Depot is committed to high standards of corporate
> governance and transparency in its reporting practices and, as
> such, conducted a review of its stock option grant practices and
> procedures since 1996. In accordance with the Company's
> procedures, all stock options granted since December 2000 had
> an exercise price based on the market price of the Company's
> stock on a specified grant date on or at the date of approval. The
> Company has not found any instances where stock options were
> retroactively priced. During this period, stock option awards have
> been made in a regular process under which grants are authorized

12

> at the time of scheduled meetings of the board of directors or a
> board committee.
>
> In five instances prior to December 2000, the date of the meeting
> or resolution approving the grant was later than that used to
> determine the stock option exercise price. In three of those five
> instances, the market price of the Company's stock on the award
> date was higher than that on the date the exercise price was
> determined. Based on its review, the Company has concluded that
> there is no material impact to its previously filed financial
> statements associated with these grants. The Company estimates
> that the unrecorded expense over the affected period was not
> more than $10 million in the aggregate. As a result, the Company
> does not intend to restate prior period financial statements.

38.     As revealed by the June 16 Press Release, the Individual Defendants caused

Home Depot shares to trade at artificially inflated levels by issuing a series of materially false

and misleading statements regarding the Company's financial results.

## Insider Trading

39.     Despite their direct participation in and knowledge of the misconduct described

herein, and their possession of material, adverse non-public information about Home Depot,

certain of the Individual Defendants sold more than 7.8 million shares of Home Depot stock

for proceeds of more than $272 million.

40.     Specifically, Langone sold 2,068,827 shares, totaling $70,344,859.00. Nardelli

sold 271,581 shares, totaling $11,345,450.00. Torne sold 85,500 shares, totaling $3,374,405.00.

Donovan sold 257,958 shares, totaling $10,216,058.00. Fernandez sold 72,667 shares, totaling

$3,030,365.00. Taylor sold 55,500 shares, totaling $2,312,094.00. Clendenin sold 6,170 shares,

totaling $259,271.00. Hart sold 1,980,000 shares, totaling $49,627,164.00. Cox sold 3,092,075

shares, totaling $121,837,354.00.

41.     Once this conduct was disclosed, Home Depot's stock has declined from over \$42 per share to below \$37 per share.

## Nardelli's Excessive Compensation

42.     Additionally, since 2000, the directors of Home Depot, lead by Langone and to serve their own self interests, have wasted corporate assets by approving excessive compensation to Nardelli in the amount of \$245 million.

43.     Nardelli's total compensation from Home Depot was \$78 million in fiscal 2000, \$35 million in fiscal 2001, \$32 million in fiscal 2002, \$27 million in fiscal 2003, \$36 million in fiscal 2004 and \$37 million in fiscal 2005. Nardelli's \$245 million compensation over the past five years was widely excessive given, among other things, that Home Depot stock was down 12% during that time.

44.     Notably, Nardelli's 2000 compensation package included a \$10 million loan that would be forgiven over five years. However, the loan would end up costing Home Depot \$21 million after the board decided to pay Nardelli's tax liability for the loan forgiveness.

45.     Nardelli's compensation each year was approved by the Home Depot board of directors based on a report and recommendation from the Compensation Committee comprised of conflicted directors (namely defendants Hill (Chair), Clendenin, Gonzalez, Johnston and Mozilo )that did not (and could not) act with undivided loyalty to Home Depot. ·

46.     Each director of Home Depot is selected and presented for shareholder approval by the Nominating Committee that Langone has chaired for the past seven years, and is beholden to Langone for the benefits received for serving as a director of Home Depot, which include \$130,000 cash per year; \$80,000 in deferred Home Depot shares per year; \$50,000 in cash or

14

deferred shares per year (at the election of the director); 9,000 stock options; $2,000 cash for each meeting; $10,000 cash per year for Chairs of board committees ($15,000 for the Chair of the Audit Committee); and the charitable marketing grants up to $100,000 each year.

47. Defendants Gonzalez, Johnston and Mozilo are top executive officers at other large companies and are motivated to eliminate any restriction on Nardelli's compensation at Home Depot that might later be used to limit their own compensation.

48. Johnston, in negotiating his own employment agreement and related compensation package at Albertson's, hired the same lawyer, Robert J. Stucker, who represented Nardelli in negotiating Nardelli's employment agreement with Home Depot. Thus, Johnston, as a member of the Compensation Committee, would negotiate with his own lawyer in determining the terms of Nardelli's employment and compensation.

49. Furthermore, Hill, the Chair of the Compensation Committee, also serves on the compensation committee for Albertson's, where she participates in determining the compensation for Johnston, who is Albertson's Chairman and Chief Executive Officer. Johnston was President and Chief Executive Officer for GE Appliances from 1999 to 2001, when Langone and Gonzalez were each directors of General Electric, and when Nardelli was (until 2000) head of GE Power Systems. These individuals cannot act independently in determining the salary of their former General Electric colleague, Nardelli.

50. Hill is also conflicted by her strong ties to Langone. In addition to selecting Hill as a director of Home Depot in 1999, Langone selected Hill as a director of Yum in 2003 and ChoicePoint in 2003. Langone is the Chair of the Nominating Committee of Yum and Chair of the Nominating Committee of ChoicePoint. Hill receives $225,000 per year in cash and Yum

15

stock options for serving as a director of Yum and received $65,000 per year in cash and ChoicePoint stock options for serving as a director of ChoicePoint. Accordingly, Hill is beholden to Langone and cannot act with undivided loyalty to Home Depot.

51.     Hill is also conflicted because she serves on the compensation committee for Albertson's, where she participates in determining the compensation for fellow Home Depot director and Home Depot Compensation Committee member Johnston, who is Albertson's Chairman and Chief Executive Officer.

## DEMAND FUTILITY

52.     Plaintiff brings this action derivatively in the right and for the benefit of Home Depot to redress injuries suffered, and to be suffered, by Home Depot as a direct result of the breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets, and unjust enrichment, as well as the aiding and abetting thereof, by the Individual Defendants. Home Depot is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

53.     Plaintiff will adequately and fairly represent the interests of Home Depot in enforcing and prosecuting the rights.

54.     Plaintiff was and is the owner of Home Depot stock during times relevant to the Individual Defendants' wrongful course of conduct alleged herein, and remain shareholders of the Company.

55.     Plaintiff has not made any demand on the present board of Home Depot -- the Individual Defendants herein -- to institute this action because such a demand would be a futile, wasteful and useless act, particularly for the following reasons:

16

(a)     The Home Depot Board of Directors and senior management participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from Home Depot's stockholders or recklessly and/or consciously negligently disregarded the wrongs complained of herein, and are therefore not disinterested parties. As a result of their access to and review of internal corporate documents, conversations and connections with other corporate officers, employees and directors, and attendance at management and/or Board meetings, each of the defendants knew the adverse non-public information regarding the improper stock option grants and financial reporting. Pursuant to their specific duties as Board members, defendants are charged with the management of the Company and to conduct its business affairs. Defendants breached the fiduciary duties that they owed to Home Depot in that they failed to prevent and correct the improper stock option granting and financial reporting. Certain directors are also dominated and controlled by other defendants and cannot act independently of them. Thus, the Home Depot Board cannot exercise independent objective judgment in deciding whether to bring this action or whether to vigorously prosecute this action because each of its members participated personally in the wrongdoing or are dependent upon other defendants who did;

17

(b)     The acts complained of constitute violations of the fiduciary duties owed
        by Home Depot's officers and directors and these acts are incapable of
        ratification;

(c)     The members of Home Depot's Board have benefited, and will continue to
        benefit, from the wrongdoing herein alleged and have engaged in such
        conduct to preserve their positions of control and the perquisites derived
        thereof, and are incapable of exercising independent objective judgment in
        deciding whether to bring this action; and

(d)     Any suit by the current directors of Home Depot to remedy these wrongs
        would likely expose the Individual Defendants and Home Depot to further
        violations of the securities laws that would result in civil actions being
        filed against one or more of the Individual Defendants, thus, they are
        hopelessly    conflicted    in    making    any    supposedly    independent
        determination whether to sue themselves.

56.     Moreover, despite the Individual Defendants having knowledge of the claims and
causes of action raised by plaintiffs, the current Board has failed and refused to seek to recover
for Home Depot for any of the wrongdoing alleged herein.

## FIRST CAUSE OF ACTION

### Against All Defendants for Breach of Fiduciary Duty

57.     Plaintiff repeats and realleges each and every allegation contained above with the
same force and effect as though fully set forth herein.

18

58.    Defendants owed and owe Home Depot fiduciary obligations. By reason of their fiduciary relationships, defendants owed and owe Home Depot the highest obligation of good faith, fair dealing, loyalty and due care.

59.    Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

60.    Each of defendants had actual or constructive knowledge that they had caused the Company to improperly grant under-priced stock options and misrepresent the financial results of the Company and failed to recover the ill-gotten gains of the recipients of the stock options or to correct the Company's publicly reported financial results and guidance. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

61.    As a direct and proximate result of defendants' failure to perform their fiduciary obligations, Home Depot has sustained significant damages. As a result of the misconduct alleged herein, defendants are liable to the Company.

## SECOND CAUSE OF ACTION

### Against All Defendants for Waste of Corporate Assets

62.    Plaintiff repeats and realleges each and every allegation contained above with the same force and effect as though fully set forth herein.

63.    As a result of the improper executive compensation and financial reporting, and by failing to properly consider the interests of the Company and its public shareholders by failing to conduct proper supervision, defendants have caused Home Depot to waste valuable corporate assets by making improper stock option grants and paying incentive-based bonuses to certain of

19

its executive officers and refusing to recover them, and incurring potentially millions of dollars of legal liability and/or legal costs to defend defendants' unlawful actions and in potential civil sanctions.

64.     As a result of the waste of corporate assets, defendants are liable to the Company.

## THIRD CAUSE OF ACTION

### Against All Defendants for Unjust Enrichment

65.     Plaintiff repeats and realleges each and every allegation contained above with the same force and effect as though fully set forth herein.

66.     By their wrongful acts and omissions, each defendant was unjustly enriched at the expense of and to the detriment of Home Depot. Certain of the executive officers and/or directors named as a defendant herein received stock options from Home Depot during the relevant period.

67.     Plaintiff seeks restitution from these defendants, and each of them, and seeks an order of this Court disgorging all illicitly obtained stock options and/or insider trading proceeds, improvidently granted loans and/or incentive compensation obtained by these defendants during the relevant period, and each of them, from their wrongful conduct, fiduciary breaches and unjust enrichment as provided for by state law.

68.     Plaintiff, as a shareholder and representative of Home Depot, seeks restitution and disgorgement of profits for the Company as hereinafter set forth.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment as follows:

20

A.      Against all of defendants and in favor of the Company for the amount of damages sustained by the Company as a result of defendants' breaches of fiduciary duties, violation of law, waste of corporate assets and unjust enrichment;

B.      Extraordinary equitable and/or injunctive relief as permitted by law, equity and statutory provisions sued hereunder, including disgorging, attaching, impounding, imposing a constructive trust on or otherwise restricting the value of improvidently granted loans or stock options and/or the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of Home Depot has an effective remedy;

C.      Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, and accountants' and experts' fees, costs and expenses; and

D.      Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: March 23, 2007

HOLZER HOLZER & FISTEL, LLC

By: _____

Corey Holzer
Georgia Bar No.: 364698
Michael I. Fistel, Jr.
1117 Perimeter Center West
Suite E-107
Atlanta, Georgia 30338
Telephone: (770) 392-0090
Facsimile: (770) 392-0029

Richard Doherty
HORWITZ, HORWITZ &
ASSOCIATES
25 E Washington Street, Suite 900

Chicago, Illinois 60602
Telephone: (866) 352-0463
Facsimile: (312) 372-1673

- and –

Curtis V. Trinko
Law Offices of Curtis V. Trinko
310 Madison Avenue, 14th Floor
New York, New York  10017
Telephone: (212) 490-9550
Facsimile: (212) 986-0158

VERIFICATION

State of Tennessee          :
                           :ss
Roane County               :

I, Glenn Vicary, depose and verify as follows:

I am plaintiff in the within derivative action on behalf of the nominal defendant The Home Depot, Inc. ("Home Depot"). I am currently a shareholder of Home Depot and was a shareholder at all times relevant hereto. The action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have. I have reviewed the allegations made the Verified Shareholder Derivative Complaint ("Complaint"), and as to those allegations of which I have personal knowledge, I believe them to be true. As to those allegations of which I do not have personal knowledge, I rely on my counsel and their investigation and believe them to be true. Having received and reviewed a copy of this Complaint, and having reviewed it with my counsel, I hereby authorize its filing.

Sign under the penalty of perjury this 23rd day of March, 2007.

Glenn Vicary